IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MICHAEL J. McADAMS**,

**Plaintiff,**

v.

**M/V MARY LYNN and STEEL
CITY MARINE TRANSPORT, INC.,**

**Defendants.**                                              No. 07-0180-DRH

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Background

This matter comes before the Court on Defendants' motion for summary judgment (Doc. 21). Naturally, Plaintiff opposes the motion (Doc. 27). For the reasons set forth below, the Court denies the motion. Further, the Court denies Plaintiff's motion for oral argument on Defendants' pending motion for summary judgment (Doc. 29).

On March 13, 2007, Michael J. McAdams filed a Complaint in Admiralty against the M/V Mary Lynn, her engines, tackle, hull and appurtenances and Steel City Marine Transport, Inc. ("Steel City") (Doc. 2). The Complaint alleges that on September 2, 2005, McAdams, while employed by Steel City as a deckhand and a

member of the crew of the M/V Mary Lynn, was attacked by the vessel's mate.[1] Specifically, McAdams alleges that the mate shoved him so that he fell backwards over a table and struck a bulkhead causing injuries to his back. (Doc. 2; p. 1, ¶ 2). Count I is an *in rem* action against the M/V Mary Lynn and alleges that the "M/V Mary Lynn was not seaworthy and the crew of the vessel was not reasonably fit for its intended purpose in that the mate possessed an unusually vicious disposition such that he would, without legal provocation, strike and injure the plaintiff." (Doc. 2; p. 2, ¶ 3). Count II is against Steel City Marine Transport, Inc. and alleges negligence, unseaworthiness and failure to pay maintenance and cure. The Complaint also alleges that Steel City operated, crewed and controlled the M/V Mary Lynn.

On February 22, 2008, Defendants filed a motion for summary judgment (Doc. 21). Specifically, Defendants contend that they are entitled to summary judgment on all counts of Plaintiff's complaint because the incident was not foreseeable as there is no evidence that the mate was a habitual violator of ship discipline; that Defendants did not breach the warranty of seaworthiness; and that McAdams forfeited his right to maintenance and cure because of his willful misconduct. Plaintiff opposes the motion arguing that Defendants have omitted significant facts that create genuine issues of material fact including: actual notice to the vessel captain of an impending attack and the exceptionally brutal and vicious

---

[1]The Court notes that the injury/incident date alleged in the Complaint is wrong. In the summary judgment pleadings, both parties state that Steel City hired McAdams as a deckhand in August 2006 and that the injury/incident occurred on January 8, 2007 (Doc. 21, ps. 1-2 and Doc. 27, ps. 1-2).

disposition of the vessel mate (Doc. 27). The Court now turns to address the merits of the motion.

## II. Facts

Michael McAdams brings this lawsuit against Steel City pursuant to the Jones Act and General Maritime Law. This action arises out of an altercation between McAdams and fellow crew member, Brian Holton, aboard the M/V Mary Lynn, a towing vessel owned by Steel City.

In August 2006, Steel City hired McAdams as a deckhand. During his first two voyages on the M/V MARY LYNN, McAdams worked under the supervision of Holton, who was the vessel's first mate.

Steel City hired Holton as a deckhand in 1998. Steel City promoted Holton to the position of mate in 2005. Holton's nickname is Flash. In 1997, Holton was convicted of aggravated assault and disclosed this conviction on his Steel City employment application.

On McAdams' third voyage, he requested a transfer to the watch opposite Holton because of friction between the two. That request was granted and the Second Mate supervised McAdams on the opposite watch.

Prior to the altercation between McAdams and Holton, the M/V Mary Lynn had a tow of four barges in its tow below Lock 3 and below Mile Markers 41 and 49 on the Arkansas River. At that time, pilot James Ponder was operating the tow and ran the tow aground due to lack of attention. The barges in the vessel's tow sustained damage including punctures.

On January 7, 2007, at or near Mile Marker 598 on the Mississippi River, the M/V Mary Lynn was getting ready to leave with the same tow of four barges that had been in tow at the time of the grounding the previous day. Holton ordered McAdams and the other deck members not to pump the water out of the damaged barges. As a result of not pumping out the water, one of the barges that had been damaged when the tow grounded "rolled" when the tow wires were removed. It took the vessel crew approximately eight hours to level the barge up and get it stationary enough to make up tow.

Captain Briggs asked the crew why the barge had not been pumped out. Holton did not answer Captain Briggs. McAdams told Captain Briggs that the barge had not been pumped out because Holton ordered them not to pump it. Captain Briggs was annoyed with Holton because the barge should have either been pumped out or called to Captain Briggs' attention. Captain Briggs expressed his displeasure with Holton.

During the third voyage, McAdams and Holton were involved in an altercation in the crew lounge on January 8, 2007. Just prior to the altercation, McAdams and another crew member were in the vessel's crew lounge discussing the vessel's capabilities with the vessel's engineer. Holton entered the crew lounge and, overhearing the conversation, told McAdams he thought that McAdams knew everything. McAdams responded that Holton did not know anything. The two men began arguing and cursing one another. McAdams then said to Holton that they should go outside. The two men stood facing each other for a period of time. Holton

with both hands shoved McAdams in the chest.  McAdams hit the wall and fell to the ground.

McAdams reported his lower back pain.  Two days later, McAdams departed the vessel for medical treatment.  He underwent two lower back surgeries.  Pursuant to its cure obligation, Steel City has paid for all of McAdams' medical expenses.

### III. Summary Judgment

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. Proc. 56(c)**.  A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. ***Buscaglia v. United States,* 25 F.3d 530, 534 (7th Cir. 1994)**.  The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial.  **Fed. R. Civ. Proc. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)**.  In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party.  ***Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)**.

## IV. Analysis

### A. Negligence Under the Jones Act

Defendants maintain that they are entitled to summary judgment on McAdams' Jones Act negligence claim because there is no evidence that Holton pushed McAdams for the benefit of the ship's business and there is no evidence that Defendants should have known the Holton would attack McAdams. In response, McAdams contends that he has presented evidence that the incident was forseeable; that Defendants had actual notice of the attack; and that Defendants failed to take any steps to protect him from harm.

The Jones Act was enacted in 1915 to provide greater protection for seamen. The Act provides:

> (a) Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; * * *

**46 U.S.C. § 688**.[2] The Jones Act provides a seaman who is injured through the negligence of his employer a cause of action to recover damages. ***See De Zon v. American President Lines,* 318 U.S. 660, 665 (1943)**. The Jones Act also provides an action for a seaman against the shipowner for negligence in failing to provide maintenance and cure. ***Cortes v. Baltimore Insular Line, Inc.,* 287 U.S.**

---

[2]The Jones Act makes applicable to seamen injured in the course of their employment the provisions of the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.,* which gives railroad employees a right to recover for injuries resulting from the negligence of their employer, its agents, or employees. ***De Zon v. American President Lines,* 318 U.S. 660, 665 (1943)**.

**367, 375-76 (1932)**.

To prevail on a Jones Act claim against the shipowner, a seaman must establish (1) personal injury in the course of his employment; (2) negligence by his employer or an officer, agent, or employee of the employer; and (3) that the employer's negligence was a cause "in whole or in part" of his injury. ***Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 436 (4th Cir.1999)**.

To further "the remedial goals of the FELA, and derivatively the Jones Act, the Supreme Court has relaxed the standard of causation by imposing employer liability whenever 'employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." ***Hernandez,* 187 F.3d at 436, quoting *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 543 (1994); accord, *Cella v. United States,* 998 F.2d 418, 428 (7th Cir. 1993) ("The plaintiff must merely establish that the employer's acts or omissions played some part, no matter how small, in producing the employee's injury."); *Brister v. A.W.I., Inc.,* 946 F.2d 350, 354 (5th Cir. 1991) ("If the defendant's negligence played any part, however small, in producing the seaman's injury, it results in liability.")**.[3] This evidentiary standard, sometimes described as "featherweight", ***see***

---

[3]The "quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence, ... and even the slightest negligence is sufficient to sustain a finding of liability." **Ribitzki v. Canmar Reading & Bates, Ltd. Partnership, 111 F.3d 658, 662 (9th Cir.1997), quoting Havens v. F/T Polar Mist, 996 F.2d 215, 218 (9th Cir.1993); see also Harbin v. Burlington Northern R.R. Co., 921 F.2d 129, 131 (7th Cir.1990) ("a trial judge must submit an FELA case to the jury when there is even slight evidence of negligence")**.

***Cella*, 998 F.2d at 427**, means that Defendants are liable if they knew or should have known of a potential hazard in the workplace yet failed to exercise care to protect McAdams.

Viewing the evidence in the light most favorable to McAdams, the Court holds that there is sufficient evidence to raise a material question of fact concerning whether Defendants knew or should have known that McAdams was in danger of assault from Holton. There is evidence that after McAdams told Captain Briggs that Holton ordered the crew not to pump out the leaking barge Holton threatened McAdams. Specifically, McAdams contends that he informed Captian Briggs that Holton threatened to "beat the hell out of me as soon as he gets a chance." (Doc. 27; Exhibit 1, McAdams' Affidavit ¶ 4). Further, there is evidence that McAdams told Captain Briggs that he believed Holton was serious; that McAdams asked Captain Briggs to do something about it and that Captain Briggs did nothing to prevent the attack. (Doc. 27, McAdams' Affidavit ¶¶ 4 & 5).

Defendants reply that the Court should disregard McAdams' affidavit as it conveniently attempts to create a fact issue to avoid summary judgment and lacks credibility. Specifically, Defendants argue that during his deposition, McAdams did not mention reporting the threat to Captain Briggs when he was describing the leaking barge incident. In response, McAdams claims that Defendants fail to acknowledge that McAdams was never asked once in his deposition if he had reported the threat to the vessel captain even though McAdams described the threat in his answers to interrogatories (Doc. 29).

Credibility determinations are not appropriate for a judge to make in ruling on a motion for summary judgment. **Anderson, 477 U.S. at 248.** Moreover, as the Seventh Circuit has explained, "so-called 'self-serving affidavit[s]'" are competent to rebut a motion for summary judgment so long as they are based upon the affiant's "personal knowledge." **Kabab v. Stepp, 458 F.3d 678, 681 (7th Cir. 2006); see also Wilson v. McRae's Inc., 413 F.3d 692, 694 (7th Cir. 2005)("Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a [party's] evidence when deciding whether a material dispute requires a trial."); Payne v. Pauley, 337 F.3d 367, 771 (7th Cir. 2003)(The Seventh Circuit has "routinely found that a non-moving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion.")**. Here, McAdams' affidavit was based upon his personal knowledge and therefore can be used as evidence to rebut Defendants' motion for summary judgment. Accordingly, the Court denies Defendants' motion for summary judgment on this claim.

**B. Unseaworthiness**

Defendants also argue that Holton's prior assault conviction does not render him unfit and that Holton did not use a weapon, dangerous instrument or his fists. Thus, Steel City did not breach the duty of warranty of seaworthiness.[4] Plaintiff responds that his theory of unseaworthiness rests on (1) the unusually

---

[4] The Court notes that most of the cases Defendants cite to in support of their argument were rendered *after* the summary judgment stage.

vicious disposition of the vessel's mate and (2) the leaking barge that gave rise to the vessel's mate's rage and subsequent attack.

The warranty of seaworthiness is a doctrine of liability without fault. ***Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946)**. A shipowner is under an absolute duty to furnish crew members with a ship and appurtenances that are reasonably fit for their intended purposes. ***Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960)**. A vessel is seaworthy if it, its appurtenances, and its crew are reasonably fit for their intended use or service. ***Id***. This standard does not require perfection. A vessel may be seaworthy without being able to withstand every peril of the sea it might encounter. ***Id.***

A vessel's condition of unseaworthiness may arise from any number of circumstances, including an insufficient number of crew assigned to perform a shipboard task, negligent orders or the existence of a defective condition, however temporary, on a part of the ship. ***Usner v. Luckenback Overseas Corp.*, 400 U.S. 494, 499 (1971)(distinguishing between claim for unseaworthiness and claim for negligence under Jones Act);** *Ribitzki*, **111 F.3d at 664;** *Mascola v. Pacific Coast Transport Co.*, **421 F.2d 1281, 1283 (2nd Cir. 1970);** *Waldron v. Moore-McCormack Lines, Inc.,* **386 U.S. 724 (1967);** *Drachenberg v. Canal Barge Co., 571 F.2d 912, 918 (5th Cir. 1978).* A plaintiff may recover on an unseaworthiness claim as a result of injuries from a seaman "with proclivity for assaulting people, if the seaman has 'a wicked disposition, a propensity to evil conduct, a savage and

vicious nature,' such that the ship becomes a perilous place, but not if the assault was 'within the usual and customary standards of the calling.'" ***Boudoin v. Lykes Brothers S S Co., Inc.*, 348 U.S. 336, 339-340 (1995)**. The shipowner's duty is to provide a seaworthy crew has been characterized as requiring a crew "equal in disposition and seamanship to ordinary men in the calling." ***Keen v. Overseas Tankship Corp.*, 194 F.2d 515, 518 (2nd Cir. 1952)**

Based on the facts of this case and the stage in the litigation, the Court finds that there are questions of material fact as to whether Holton is a seaman with "a wicked disposition, a propensity to evil conduct, a savage and vicious nature" and whether the altercation at issue was 'within the usual and customary standards of the calling." Holman's prior conviction in 1997, which he received an eight year prison term, was for assaulting his two year old nephew on the head and back with a hairbrush, belt and hand.[5] (Exhibit 27-5). Clearly, this type of abuse on a two year child is unwarranted and constitutes "a wicked disposition." In fact, the Court cannot imagine *any* set of circumstances that would warrant this cruel punishment

---

[5]The "Current Offense" for Holton's charge and conviction reads in part: "On October 12, 1996, a two year old child was presented to Memorial Hospital of Carbondale with severe bruising. The child had bruising on the buttocks, left eye and head area. The child's left eye was swelled shut and he had a cut on the back of his head. The mother of the child and the child's "uncle", the defendant, were the two individuals that brought the child to the hospital. The mother advised the Carbondale Police Department that the defendant was babysitting the child as she was working. Officer Brinkley with the Carbondale Police Department interviewed the defendant, who presented several different stories as to how the child received the injuries she sustained. Eventually, the defendant stated that he had spanked the child the previous evening with a belt causing the bruising to the child's buttocks area. The defendant further advised that approximately an hour and half prior to taking the child to the hospital the defendant struck the child about the head with a hair brush which caused cuts to the child's head as well as the bruising to the child's eyes. Photographs of the child were taken; the photographs depict a child who had racoon eyes and a cauliflower ear, and a fairly large cut to the back of the head." (Doc. 27-5; p. 12).

to a baby.  Further, the Court finds that there is a question of material fact as to whether the leaking barge rendered the vessel unseaworthy.  The leaking barge (which Holton ordered not to pump) caused McAdams to inform Captain Briggs that Holton did not follow the Captain's order.  The record reveals that this made Holton mad and that quite possibly was a factor that led to the altercation between the two.  Accordingly, the Court denies Defendants' motion for summary judgment.

### C. Maintenance and Cure

Defendants move for summary judgment on this claim arguing that McAdams is not entitled to maintenance and cure because McAdams challenged Holton to a fight in the presence of two fellow crew members.  Defendants argue McAdams' cursing and verbal taunting constituted willful misconduct, therefore, he forfeited his right to maintenance and cure.  McAdams counters that he was trying to avoid the confrontation; make his escape; and that he wanted to go outside to get away from Holton.

"Cure and maintenance are rights given to seamen as incidents of their employment." **Mullen v. Fitz Simons & Connell Dredge & Dock Co., 191 F.2d 82, 85 (7th Cir.), cert. denied, 342 U.S. 888 (1951)(citing The Osceola, 189 U.S. 158 (1903))**.  A shipowner is obligated to provide maintenance and cure for injured members of the crew.  Maintenance is the payment by a shipowner to a seaman for the seaman's food and lodging expenses incurred while he is ashore as a result of illness or accident.  **Vaughan v. Atkinson, 369 U.S. 527, 531 (1962)**.  Cure is the payment of medical expenses incurred in treating the seaman's injury or

illness. *Id*. **at 532**. Where it is clear that the shipowner is obligated to pay maintenance and cure but willfully and persistently refused to do so, the court can also award reasonable attorney fees. *Id.* **at 530-31**. The Supreme Court explained:

> Among the most pervasive incidents of the responsibility anciently imposed upon a shipowner for the health and security of sailors was liability for the maintenance and cure of seamen becoming ill or injured during the period of their service. In the United States this obligation has been recognized consistently as an implied provision in contracts of marine employment. Created thus with the contract of employment, the liability … in no sense is predicated on the fault or negligence of the shipowner. Whether by traditional standards he is or is not responsible for the injury or sickness, he is liable for the expense of curing it as an incident of the marine employer-employee relationship. So broad is the shipowner's obligation, that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility.… Only some willful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection.

*Aguilar v. Standard Oil Co.*, **318 U.S. 724, 730-31 (1943) (footnotes omitted)**.

After examining all of the evidence and drawing reasonable inferences in the light most favorable to McAdams, it is clear that genuine issues of material fact remain as to whether McAdams' conduct constituted "wilful misbehavior or deliberate act of indiscretion." As to the incident, McAdams testified the following:

> A: He was.
> Q. What was he saying?
> A: Trying to fight me, is what he was trying – trying to get me to fight him, is what he was trying to do. As far as every word for word, I couldn't tell you.
> Q: But to the extent that you can recall any specific things that he said, what did he say?
> A: Cussing at me, telling me that the only reason Steel City keeps me around is because I show up for work. And so I said, "Well, why do they keep you around?" And I – you know after that I don't know – I felt confined you know, because he's a big guy. You know, he's like

probably 5'10", 400 pounds.
Q: 5'10", 400?
A: Yeah. He's huge. And so I said, "Why don't we just take it – go out - take it outside," or something like that, if I recall correct. And he turned around, because I thought if I got outside at least I could get away from him, you know, because in a 6-by-9 room, you know, I can't – I ain't got anywhere to go. Actually, I'm trapped between Todd, the loveseat, and all I got's him right here in my face.

(McAdams' Deposition, p. 85). Furthermore, Todd Partridge, who witnessed the altercation, testified the following:

Q: Okay. When Mike said, "No, you don't do your job," I think that you said that Flash got up and moved towards Mike?
Y: Yeah. He was – he was mad, yeah.
Q: Did he come straight across, did he go to the right, to the left? What did he do?
A: I thought he went to the door and said, "Let's go outside," is what I thought.
Q: So did he go over to this door by the portside?
A: Yes.
Q: And then stopped and said, "Let's go outside," or ...
A: Well, he said, "Let's go outside," walking over there. And then when he got to the door, he said, "Well we don't even have to go outside," and turned around, and Mike stood up and then he was standing there.
Q: Now, had Mike stood up before he came back and turned around?
A: No, I don't think so.

(Doc. 27-9; Todd Partridge's Deposition, ps. 24-25 lines 9-4).

Based on the foregoing, the Court finds that there is a question of fact of whether McAdams' conduct constitutes willful behavior or deliberate act of indiscretion.[6] Thus, the Court denies Defendants' motion for summary judgment on the maintenance and cure claim.

---

[6] Defendants cite to ***Mears v. American Export Lines Inc.*, 457 F.Supp 846 (D.C. NY 1978)** in support of their argument. While the Court agrees with the holding in ***Mears***, the Court finds that the facts of ***Mears*** are distinguishable from the facts of this case.

## V. Conclusion

Accordingly, the Court **DENIES** Defendants' motion for summary judgment (Doc. 21) and Plaintiff's motion for oral argument on Defendants' pending motion for summary judgment (Doc. 29). The Court **REMINDS** the parties that this matter is set for Final Pretrial Conference on August 7, 2008 at 10:00 a.m.

**IT IS SO ORDERED.**

Signed this 17th day of June, 2008.

/s/ David R Herndon
**Chief Judge**
**United States District Court**